**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00198-HBB**

**KAYLA D.** [1]
***o.b.o K.D., a minor***                                                                                      **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**[2]
**SOCIAL SECURITY ADMINISTRATION**                                                **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Kayla D. ("Plaintiff"), on behalf of K.D., a

minor ("Claimant"), seeking judicial review of the final decision of the Commissioner pursuant to

42 U.S.C. § 405(g).  Both Plaintiff (DN 17) and Defendant (DN 23) have filed a Fact and Law

Summary.  For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**,

and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14).  By Order entered July 14,

2021 (DN 15), the parties were notified that oral arguments would not be held unless a written

request therefor was filed and granted.  No such request was filed.

---

1    Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

2    Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of
     the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

## FINDINGS OF FACT

Plaintiff filed an application for Supplemental Security Income Benefits on behalf of Claimant on October 13, 2017 (Tr. 15, 203-10).   Plaintiff alleges Claimant became disabled on June 29, 2008, as a result of proximal focal femoral deficiency, bicuspid aortic stenosis, and compensated heart (Tr. 15, 96, 112, 215).   The claim was initially denied on February 18,[3] 2019, and the claim was again denied upon reconsideration on May 17,[4] 2019 (Tr. 15, 108-09, 124-26).   Thereafter, on May 28, 2019, Plaintiff filed a written request for a hearing before an administrative law judge (Tr. 15, 150-52).

Administrative Law Judge David Peeples ("ALJ") conducted a video hearing from Paducah, Kentucky on December 13, 2019 (Tr. 15, 30-32).   Present at the hearing from Owensboro, Kentucky was Plaintiff, Claimant, and their attorney Sara J. Martin Diaz (Id.).

On March 24, 2020, the ALJ rendered a decision that Plaintiff was not disabled, pursuant to the three-step sequential process, since October 13, 2017, the date the application was filed (Tr. 15-24).   At the outset, the ALJ found that Claimant was born on June 29, 2008; was a school-age child when the application was filed; and was an adolescent when the decision was rendered (Tr. 16).   Turning to the sequential process, at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 13, 2017, the application date (Id.).

---

3   The ALJ's determination lists the initial denial date as February 19, 2019 (Tr. 15).   The date accompanying the signature of the Disability Examiner, as well as the date listed on the Disability Determination and Transmittal document, list the denial date as February 18, 2019 (Tr. 108-09).   As such, the Court will use the February 18 date.

4   Like the previous footnote, the ALJ's determination lists the reconsideration denial date as May 20, 2019 (Tr. 15). The date accompanying the signature of the Disability Examiner, as well as the date listed on the Disability Determination and Transmittal document, list the denial date as May 17, 2019 (Tr. 124-26).   As such, the Court will use the May 17 date.

At the second step, the ALJ determined Plaintiff has the following severe impairments: osteoarthritis, large femoral leg length discrepancy, and bicuspid aortic stenosis with mild aortic stenosis and compensated heart (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Id.).   Specifically, the ALJ considered Listings 101.02 (*Major dysfunction of a joint(s)*), 101.03 (*Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*), and 104.06 (*Congenital heart disease*) (Tr. 16-17). Subsequently, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of one of the listed impairments in Appendix 1 (Tr. 17).   Thus, the ALJ found that Claimant had not been disabled, as defined in the Social Security Act, since October 13, 2017, the date the application was filed (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 199-201).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Judicial review of cases arising under the Social Security Act is governed by 42 U.S.C. § 405(g).   This statute limits the Court's review to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013) (citing 42 U.S.C. § 405(g); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)); Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged

conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993) (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)); Gayheart, 710 F.3d at 374 (citing Colvin v. Barnhart, 475 F.3d 727, 730 (6th Cir. 2007)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cotton, 2 F.3d at 695-96.

### The Commissioner's Sequential Evaluation Process

The Commissioner has promulgated regulations setting forth a three-step sequential evaluation process for evaluating a child's claim of disability.   20 C.F.R. § 416.924.   In summary, the evaluation proceeds as follows:

> (1) Is the child engaged in substantial gainful activity?
>
> (2) Does the child have a severe impairment?
>
> (3) Does the child have an impairment that satisfies the duration requirement and meets, medically equals, or functionally equals the criteria of a listed impairment within Appendix I?

Here, the ALJ denied Plaintiff's application at the third step.

4

Challenge to Finding No. Four: Meets Listing Severity

1. Arguments of the Parties

The Court will consider Plaintiff's argument in reverse order so as to follow the sequential findings of the ALJ. Plaintiff maintains that "[t]he medical records, educational records, and testimony of [Claimant] and Plaintiff demonstrate [Claimant's] conditions met Medical Listing 101.02" (DN 17-1, p. 8). Plaintiff takes issue with the ALJ's analysis, or lack thereof, to conclude there was "no evidence" of meeting the Listing (Id.) (citing Tr. 16). Plaintiff lists the individual requirements of Listing 101.02 and contends that Claimant meets all the requirements (Id. at pp. 8-9). Plaintiff draws conflict out of the ALJ's persuasiveness finding and reliance upon the opinions of the non-examining State agency physicians, who found "no limitation" in moving and manipulating objects, while the ALJ disagreed and found a "marked" limitation (Id. at p. 9) (citing Tr. 23-24, 105, 121).

Defendant disputes this contention by asserting that Plaintiff fails to meet the burden of showing that Claimant meets or medically equals an impairment in the Listings (DN 23, p. 5). Defendant explains that Listing 101.02 requires "[m]ajor dysfunction of a joint(s)," as opposed to Plaintiff's statement of requiring a "gross anatomical deformity," and Claimant's femoral impairment impacts the length of her femurs, not the joints associated with the femurs (Id. at p. 6). "Thus, [Claimant] could not possibly meet or equal listing 101.02, as her impairment does not meet the requisite inclusionary criteria of joint dysfunction" (Id.) (emphasis omitted). Moreover, Defendant contends that Claimant does not meet the criteria for having an "inability to ambulate effectively" (Id. at pp. 6-7). "While [Claimant] temporarily used a walker or crutches immediately following her surgeries, it was short-term, and certainly did not last for a continuous

12-month period as required to show listing-level severity" (Id. at p. 7).   Defendant recounts notes where Claimant was walking independently, with and without prosthesis, and after surgeries, Claimant would discontinue use of a walker or crutches after a few months (Id. at pp. 7-8) (record citations omitted).   Finally, Defendant refers to Plaintiff's and Claimant's testimony at the administrative hearing in December 2019 where "they anticipated that [Claimant] would be able to ambulate without an assistive device and return to school following the upcoming visit to the surgeon in January 2020" (Id. at p. 8) (citing Tr. 48, 56-57).   Therefore, Defendant posits "that, in addition to not having major dysfunction of a joint as required by the listing, [Claimant] likewise did not demonstrate ineffective ambulation for a continuous 12-month period at any point during the period at issue" (Id.).

    2.   Discussion

    Plaintiff's argument is solely focused and discusses the findings related to Listing 101.02 (DN 17-1, pp. 8-10).   As such, any possible contentions as to Listings 101.03 and 104.06, or any other listings, are deemed waived.   *See* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) ("We consider issues not fully developed and argued to be waived."); Bracey v. Comm'r of Soc. Sec., No. 10-12659, 2011 U.S. Dist. LEXIS 86136, at *18 (E.D. Mich. July 12, 2011) (citing United States v. Campbell, 279 F.3d 392, 401 (6th Cir. 2002); McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997)) ("Any issue not raised directly by plaintiff is deemed waived.").

    Looking to the ALJ's determination, the ALJ found that Claimant's impairments did "not meet, medically equal, or functionally equal Listing 101.02" (Tr. 16).   This was because "[t]here [was] no evidence characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of affected joint(s), and

findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" (Id.).

As noted above, at the third step, the administrative law judge will determine whether a claimant's impairment(s) meet or medically equal any listing in Appendix 1.   To meet a listing within Appendix 1, the claimant must demonstrate both the diagnostic and the severity or "B" criteria are satisfied.   20 C.F.R. § 416.925(d).   In the relevant part, Listing 101.02 reads as follows:

> 101.02      *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints(s).   With:
>
> A.      Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 101.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, 101.02.[5]

In the present application, Plaintiff alleges Claimant became disabled as a result of, among other impairments, proximal focal femoral deficiency (Tr. 15, 96, 112, 215).   Claimant's physical therapy initial evaluation mentioned this condition and noted that it "result[ed] in significant shortening of her right thigh" (Tr. 943, 1291), which is consistent with documents from Shriners Hospital for Children recounting Claimant's "history of a leg length discrepancy with the right leg shorter than the left" (Tr. 1258).

---

5   Listing 101.02B discusses "[i]nvolvement of one major peripheral joint in each upper extremity," which is not applicable to the present matter.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 101.02B.

Moreover, during the administrative hearing, the ALJ was conversing with Claimant and confirmed "the issue that we have here is pretty much the issue about the growth and lengthening, the discrepancy in the lengthening of [Claimant's] legs" (Tr. 46).   Claimant agreed with that statement (Id.).   Plaintiff also confirmed that the purpose of Claimant's surgeries is to correct the discrepancies in leg lengths (Tr. 53-54).   The goal is achieved by "cut[ting] the bone in half" and "put[ting a] device in there" (Tr. 54).   Thereafter, Plaintiff will use a "big, giant magnet" on the device to "encourage" development of more bone in the gap (Tr. 54-56).

Plaintiff's Fact and Law Summary does not address or cite any documentation that would demonstrate that the impairment involves one major peripheral weight-bearing joints (*see* DN 17-1, pp. 8-10).   Instead, Plaintiff merely concludes that the requirement is "clearly met" and the resulting argument only focuses on Claimant's ability to ambulate effectively (Id.).

Thus, the testimony and the documentation demonstrate that Claimant's impairments do not involve a major peripheral weight-bearing *joint*.   Rather, Claimant's impairments are related to the structure and length of her femoral bones.   By not involving a joint, Claimant's impairments would be precluded from meeting the criteria of Listing 101.02.   This is consistent with the ALJ's findings about Claimant not meeting the Listing.

Therefore, the ALJ's determination regarding Listing 101.02 is supported by substantial evidence and comports with applicable law.   Plaintiff is awarded no relief under this challenge.

Challenge to Finding No. Five: Functionally Equal Listing Severity

1.   Arguments of the Parties

Plaintiff contends that the ALJ erred by not having substantial evidence to support the finding that Claimant's impairment did not functionally equal the severity of the Listings in

8

Appendix 1 (DN 17-1, pp. 3-8).   Specifically, Plaintiff focuses on Listing 101.02 (Id. at p. 3).

Plaintiff argues that Claimant has an extreme limitation in the domain of her "health and physical

well-being" (Id. at p. 4), in contrast to the finding of "less than a marked limitation" (Tr. 18).   At

a minimum, Plaintiff believes Claimant's regular surgeries, physical therapy, prosthetics, use of

an ambulation device, inability to participate in age-appropriate physical activities, and need to

switch to a homebound school curriculum demonstrates a limitation "to at least a marked degree"

(DN 17-1, p. 4).   To substantiate this position, Plaintiff argues that Claimant's impairments

"require[] repeated surgeries to place and remove hardware for femoral lengthening, as well as

intensive physical therapy and also immigration/debridement of the site" (Id. at p. 5).   Plaintiff

cites to her own testimony at the administrative hearing, "it takes a year to bounce back [from the

surgical procedures] and then [Claimant] goes in to have another one, so she's never really fully

[recovered]" (Id.) (quoting Tr. 53).   Moreover, Plaintiff contends that Claimant's level of pain is

not properly considered, as Claimant experiences significant and frequent pain" (Id. at pp. 6-7).

Finally, Claimant's impairments and surgeries have resulted in a shift towards a "homebound"

school program throughout her childhood (Id. at p. 7).   Thus, Plaintiff contends that she should

be found to have at least a "marked" limitation in her "health and physical well-being" (Id.).

Defendant, in contrast, posits that "the ALJ reasonably determined that [Claimant] did not

have an impairment or combination of impairments that functionally equaled the severity of the

listings" (DN 23, p. 9).   "The ALJ put forth reasonable and relevant information that justified his

finding that, while [Claimant] demonstrated marked limitation in the domain of Moving About

and Manipulating Objects, she did not demonstrate marked or extreme limitations in any other

functional domain, including Health and Physical Well-Being" (Id.).   Defendant explains that the

9

"health and physical well-being" category will be considered independent of the "moving about and manipulating objects" category, which the ALJ considered and is unchallenged by Plaintiff (Id. at p. 10) (citing 20 C.F.R. § 416.926a(1)).   Moreover, the ALJ "comprehensively detailed [Claimant]'s longitudinal surgical history, including her postoperative therapy and recovery, temporary use of assistive devices following surgeries, and her reports of pain" (Id. at p. 11) (citing Tr. 20-22).   Additionally, the ALJ also considered opinion evidence from Claimant's teacher and the State agency medical consultants (Id. at pp. 11-13) (citing Tr. 24, 105, 121, 238-42).   As for the issue of missing pages from Claimant's teacher's questionnaire, Defendant states that this is a nonissue, as "the missing pages concern the domains of Acquiring and Using Information, Interacting with Others, and Caring for Self, none of which Plaintiff challenges" (Id. at p. 12, n.5). Finally, Defendant disputes Plaintiff's positions as to the timing of surgeries, the level of pain reported, and the recovery timeline to return to normal home and school activities without difficulty or limitation (Id. at pp. 13-14).

    2.  Discussion

    At the third step, if the impairment does not meet or medically equal any listing in Appendix 1, the administrative law judge will determine whether it results in limitations severe enough to functionally equal the listings in Appendix 1.   20 C.F.R. § 416.926a(a).   In making this determination, the administrative law judge will consider the degree of limitation caused by the impairment in six broad areas of functioning called domains.   20 C.F.R. § 416.926a(b)(1). The six domains are (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.   20 C.F.R. §§ 416.926a(b)(1)(i)-(vi).   If an

impairment results in "marked" limitations in two of the six domains or results in an "extreme" limitation in one of the six domains, then it is severe enough to functionally equal the listings. 20 C.F.R. § 416.926a(a).   A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities.   20 C.F.R. § 416.926a(e)(2)(i).   An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities.   20 C.F.R. § 416.926a(e)(3)(i).

Here, the ALJ found that Claimant "does not have an impairment or combination of impairments that functionally equals a listing" (Tr. 24).   When considering the six domains, the ALJ made the following findings: "less than a marked limitation" in acquiring and using information; "less than a marked limitation" in attending and completing tasks; "no limitation" in interacting and relating with others; "a marked limitation" in moving about and manipulating objects; "no limitation" in the ability to care for himself/herself; and "less than a marked limitation" in health and physical well-being (Tr. 18).   When looking to the health and physical well-being domain, the ALJ's opinion detailed the opinions of Plaintiff and Claimant's teacher; medical records regarding Claimant's proximal femoral focal deficiency and related surgeries; Claimant's history of bicuspid aortic valve with mild aortic stenosis; and records detailing Claimant's visits to physical therapy and rehabilitation (Tr. 19-23).   Additionally, the ALJ noted that Claimant's academic record showed she missed 15 days of school in the 2018-19 school year, 10 of which were excused, and Claimant was tardy 4 times, 1 of which was excused (Tr. 20) (citing Tr. 304).   Also of note, the ALJ recognized, and found persuasive, a previous administrative determination which opined that Claimant's impairments did not functionally equal a listing and

that Claimant was "not disabled" (Tr. 23) (citing Tr. 65-83).   The previous opinion, which is dated September 29, 2017, found that Claimant had a less than marked limitation in health and physical well-being (Tr. 81).

The regulations describe the domain as the consideration of "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) [moving about and manipulating objects]." 20 C.F.R. § 416.926a(l).   Specifically, "a physical . . . disorder may have physical effects that vary in kind and intensity, and may make it difficult for [the claimant] to perform [their] activities independently or effectively."   20 C.F.R. § 416.926a(l)(1).   The regulations also provide examples, but not an exhaustive list, of impairments that functionally equal the listings, including:

> (1)   Any condition that is disabling at the time of onset, requiring continuous surgical management within 12 months after onset as a life-saving measure or for salvage or restoration of function, and such major function is not restored or is not expected to be restored within 12 months after onset of this condition.
>
> (2)   Effective ambulation possible only with obligatory bilateral upper limb assistance.
>
> (3)   Any physical impairment(s) or combination of physical and mental impairments causing complete inability to function independently outside the area of one's home within age-appropriate norms.
>
> (4)   Requirement for 24-hour-a-day supervision for medical (including psychological) reasons.
>
> (5)   Major congenital organ dysfunction which could be expected to result in death within the first year of life without surgical correction, and the impairment is expected to be disabling (because of residual impairment following surgery, or the recovery time required, or both) until attainment of 1 year of age.

20 C.F.R. § 416.926a(m)(1)-(5).

12

When considering the information described above, a "marked" limitation of this domain may be considered if:

> [The Claimant is] frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs.  For purposes of this domain, "frequent means that you have episode of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more.  We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv).

Whereas an "extreme" limitation in this domain is characterized as follows:

> [The Claimant is] frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation in paragraph (e)(2)(iv) of this section.   However, if you have episodes of illness or exacerbations of your impairment(s) that we would rate as "extreme" under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases.  *See* §§ 416.925 and 916.926.

20 C.F.R. § 416.926a(e)(3)(iv).

As discussed above, the ALJ found one "marked" limitation in the domain of "moving about and manipulating objects" (Tr. 18), while two "marked" limitations or one "extreme" limitation is necessary to find functional equivalence to the severity of a listing.  20 C.F.R. § 416.926a(a).  Plaintiff's argument contends that Claimant "is affected to at least a marked degree" (DN 17-1, p. 4).  Should Claimant have at least a "marked" limitation in this domain, then she has shown a functional equivalency in severity to the listing.

13

The documents cited by Plaintiff reiterate Claimant's surgery schedule and post-surgery physical therapy (Id. at pp. 5-6).   The ALJ's analysis included this information and details the surgeries dating back to 2015 through 2019 (Tr. 20-22).   Plaintiff explains what is accomplished during the surgeries to correct the length of Claimant's leg (DN 17-1, pp. 5-6), but this information is also present in the ALJ's decision (Tr. 20-22).   This includes the ALJ discussing the September 2017 surgery where Claimant's "doctors inserted an 8.5 mm x 275 mm Ellipse self-lengthening femoral intramedullary nail and excised the iliotibial band in her right distal thigh" (Tr. 20) (citing Tr. 479).   Then, in August 2018, "[h]er orthopedists removed the intramedullary nail from her right femur with associated interlocking screws and [irrigation] and debrided the right femur, including the intramedullary reaming, skin, subcutaneous tissue, muscle, and bone due to a possible deep infection" (Tr. 21) (citing Tr. 607, 614-15, 1066-67).   Immediately after this discussion, the ALJ detailed Claimant's physical therapy and was "discharged from physical therapy on May 30, 20[1]8 after she met most of her goals and returned to ambulation and all of her prior activities" at pre-surgery levels, including "trampolining, contact sports, use of skate boards, roller skating, hoverboards" with some of these being against the advice of her doctor (Id.) (citing Tr. 995-98; 1031-34; 1287-90).   However, physical therapy notes "[s]he has had no ill effects as a result of this" (Id.).   The ALJ even observed, following Claimant's September 2019 surgery, Claimant, "[b]y all accounts, . . . progressed through physical therapy without much difficulty, though she did experience some pain" (Tr. 22) (citing Tr. 1321-1419, 1444-56).   Thus, the ALJ's determination presents and utilizes substantial evidence to support the finding of "less than a marked limitation" in health and physical well-being.

Plaintiff also challenges the ALJ's consideration as to the level of pain Claimant experiences (DN 17-1, p. 6).   At the beginning of this section, the ALJ correctly notes the two-step process to determine whether "there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms" and whether that pain or other symptoms are consistent with the testimony and evidence in terms of intensity, persistence, and limiting effects (Tr. 18) (citing 20 C.F.R. § 416.929; SSR 09-2p through 8p, 16-3p).   *See also* Duncan v. Sec'y of Health & Hum. Servs., 801 F.2d 847, 853 (6th Cir. 1986).   Since tolerance of pain and/or other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the administrative law judge, who has the opportunity to observe a claimant's demeanor, "should not be discharged lightly."   Houston v. Sec'y of Health & Hum. Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)).

The following paragraph considered the function report completed by Plaintiff and discussed the purported limitations caused by Claimant's impairments (Tr. 19) (citing Tr. 224-34). Ultimately, though, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Id.).   Looking to the totality of the ALJ's determination, the ALJ considers and discusses opinion evidence about Claimant, Claimant's school records, Claimant's medical records, and the previous administrative decision (Tr. 19-24). The ALJ specifically considers the documentation related to Claimant's surgeries and physical

therapy, which note when Claimant had been discharged from physical therapy and was able to complete numerous activities, including "trampolining, contact sports, use of skate boards, roller skating, hoverboards" (Tr. 20-23).   Thus, when viewed as a whole, the ALJ's determination considers the subjective levels of pain complained of by Claimant, evaluates these complaints based upon the appropriate standards, and explicitly makes the corresponding findings.   *See* Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 551 (6th Cir. 2014) (the decision of the ALJ should be "viewed as a whole").

Therefore, while Plaintiff may desire a different determination by the ALJ, the ALJ's determination considered all the information presented by Plaintiff and other information. Substantial evidence is present in this case, and the ALJ's opinion incorporates this evidence into the functional equivalence finding.   As such, Plaintiff's arguments to this finding are unavailing and will be awarded no relief.

## Missing Pages

Finally, as a brief matter, Plaintiff contends that a statement obtained by the Commissioner was recognized by the ALJ, but the document was missing every other page (DN 17-1, pp. 9-10) (citing Tr. 23, 238-42).   Since the ALJ found this document to be "partially persuasive" and several pages are missing, Plaintiff contends that this is "extremely prejudicial for the claimant and constitutes additional grounds for reversal, or in the least, a remand" (Id. at p. 10).

The pages in question, contained within Exhibit C4E, are part of a questionnaire completed by Claimant's fifth-grade teacher (Tr. 235-43).   The information in this questionnaire focuses on the domains for functional equivalency (Id.).   The pages in the record only denote the odd-numbered pages (Id.).

16

During the administrative hearing, the ALJ explicitly noted the missing pages (Tr. 41).
The exchange between the ALJ and counsel reads:

> ALJ:   Okay, thank you. One housekeeping matter I would want to touch base with you and you referenced, I think you referenced it, was the teacher questionnaire.
>
> ATTY:  Yes.
>
> ALJ:   It's at 4E, yeah, C4E.  The version that got scanned into the record, it looks like it's every other page.
>
> ATTY:  Oh, I didn't -- that's strange.
>
> ALJ:   It's missing the even numbered pages.
>
> ATTY:  I did not catch that, Judge.   I apologize.
>
> ALJ:   Do you have the full version?
>
> ATTY:  That's what we obtained 4E.   That was obtained by DDS, so we would not have a full version.   That would be through DDS.  The school might.  I could reach out to them and see if they still have it on file.
>
> ALJ:   Either way, I think it might be a good idea that we have a fully copy of that record, so we can --
>
> ATTY:  I'll reach out to the school and see.   I bet they're required to keep those on record, so --
>
> ALJ:   My guess is the original is like front and back pages and somebody just ran it through   without saying scan both pages.
>
> ATTY:  I will do that, Judge.
>
> ALJ:   I think that would be informative, at least.
>
> ATTY:  Absolutely.

(Id.).

At the conclusion of the hearing, the ALJ stated that the receipt of the remaining pages would be considered supplementing documents that are already in the record, as opposed to a new record (Tr. 60).   The ALJ inquired into how long it may take counsel to retrieve the documents, and counsel responded,

> I need to do it now because they're getting ready to go out on
> Christmas break and they're a hospital.  So I'll contact them this
> afternoon and see if they have it.   If they don't, I'll call your office
> and let them know if they say they don't have it.   Hopefully, they
> do.

(Tr. 59-60).   There are no documents in the administrative record which discuss submission of

the additional documents or notes a conversation between counsel and the ALJ's office.   The

ALJ's opinion simply noted that "[t]he claimant's fifth grade general education teacher, Elizabeth

Kingrey, completed a teacher questionnaire [o]n November 29, 2018, but her opinion omitted the

even-numbered pages" (Tr. 19) (citing Tr. 235-43).   Plaintiff contends that the pages were "never

found in [Claimant]'s school file and the location of the original is still unknown[,]" even after

efforts to "reach out to the multiple schools and teachers in an attempt to contain the complete

report" (DN 17-1, pp. 9-10).

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . ."

Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006).   The Social Security Act

authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision

affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand);

and (2) a pre-judgment remand for consideration of new and material evidence that for good cause

was not previously presented to the [Commissioner] (a sentence six-remand)."   Faucher v. Sec'y

of Health & Hum. Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).

Sentence four of 42 U.S.C. § 405(g) authorizes a post-judgment remand.   Under sentence

four, the court makes a final judgment (e.g., affirming, reversing, or modifying the final decision

of the Commissioner) and remands the case to the Commissioner with instructions to consider

additional evidence and/or conduct additional proceedings to remedy a defect in the original

18

proceedings.  Faucher, 17 F.3d at 175.  As discussed in more depth above, substantial evidence supports the ALJ's determinations in this case, and "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).  Thus, a sentence four remand is not applicable here.

Alternatively, under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision.  Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006).  "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding."  Melkonyan, 501 U.S. at 98.  The party seeking this type of remand has the burden of demonstrating that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"  42 U.S.C. § 405(g); see Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Faucher, 17 F.3d at, 174-175.

The Supreme Court of the United States has explained that evidence is "new" only if it was "not in existence or available to the claimant at the time of *the administrative proceeding*." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); see Melkonyan, 501 U.S. at 98 (indicating that evidence is "new" if it was not available to the claimant at the time of the administrative proceeding).  The Sixth Circuit uses "administrative proceeding" and "hearing" interchangeably in its discussion of the applicable law.  *See e.g.*, Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).  Thus, in assessing whether the evidence is new, the issue is whether the documents existed or were available to

Plaintiff at the time of the administrative hearing.   Here, the discussion between the ALJ and counsel demonstrates that these pages existed and were available.   Moreover, this is emphasized by the fact that some of the pages were in the record, while others were not.   Thus, the pages do not warrant a sentence six remand.

Additionally, as cited in the Commissioner's Fact and Law Summary, the Court has previously found instances of harmless error, if any error even occurred, when pages may be missing but a plaintiff has not demonstrated an impact on the ALJ's determination that was caused by the absence.   Sutton v. Berryhill, No. 4:17-CV-00055-HBB, 2018 U.S. Dist. LEXIS 28258, at *14-15 (W.D. Ky. Feb. 20, 2018) (citing Cole v. Astrue, 661 F.3d 931, 940 (6th Cir. 2011)).   This finding is applicable here.   While Plaintiff asserts that this missing portion is "extremely prejudicial," Plaintiff has not argued how the missing pages impacted the ALJ's ultimate determination.   As such, the error, if any error occurred, is harmless.   Id.

Therefore, Plaintiff is awarded no relief under this challenge.

## Conclusion

"As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, this Court's place is not to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   Id.   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

June 8, 2022

Copies:        Counsel of Record

21